IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| RONALD LEE HATCHER, #153577, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-226-WHA |
| | ) | (WO) |
| | ) | |
| WILLIAM WYNNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Ronald Lee Hatcher ("Hatcher"), an indigent state inmate.  *Doc. No. 1*.  Hatcher subsequently filed an amendment to the complaint on May 1, 2013.  *Doc. No. 7*.  The claims remaining before the court challenge actions taken by two voting members of the Alabama Board of Pardons and Paroles in denying Hatcher parole on February 27, 2013.  *See Recommendation of April 17, 2013 - Doc. No. 4*, adopted as opinion of the court, *Doc. No. 19* (May 17, 2013) (dismissing claims barred by the statute of limitations, plaintiff's equal protection claim and his request for monetary damages arising from alleged constitutional violations). Specifically, Hatcher alleges the defendants "probably" relied on "false, erroneous, and prejudicial information" regarding his medical status and perceived dangerousness to society referenced in the October 5, 1998 denial of parole as the basis for the decision to deny parole issued in February of 2013.  *Doc. No. 1 at 6*.

1

Hatcher further asserts that he believes the remarks on the 1998 parole denial form "refer[] to [his] HIV medical status" and argues that any reliance by the defendants on his HIV status to deny parole is violative of Title II of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act. *Doc. No.* 7 at 1. The defendants in this cause of action are William Wynne, Jr., Robert Longshore, and Cliff Walker, members of the Alabama Board of Pardons and Paroles at the time of the challenged decision to deny parole, Velinda Weatherly, a member of the parole board from 2004 until 2009; Cynthia Dillard, the Executive Director of the Alabama Board of Pardons and Paroles; and Eddie Cook and Phil Bryant, assistant executive directors for the parole board.

The defendants filed a special report and supporting evidentiary materials addressing Hatcher's claims for relief. In this filing, the defendants assert that they did not act in violation of Hatcher's constitutional rights. Specifically, defendants Wynne and Walker deny relying on false or erroneous information to deny Hatcher parole and assert that they did not consider his HIV status during the parole consideration process. Wynne and Walker also state that they conducted an assessment of Hatcher's criminal record, the nature and severity of his criminal offenses, his potential for future violence, the community attitude towards him and the testimony from interested parties presented at the parole hearing, and determined that release of Hatcher on parole would be incompatible with the welfare of society. Based on this determination, Wynne and Walker denied Hatcher parole.

After receipt of the defendants' special report, the court issued an order directing Hatcher to file a response to the report and advising him that such response should include affidavits or statements made under penalty of perjury and other relevant evidentiary materials. *Order of June 5, 2013 - Doc. No. 28* at 2. This order specifically cautioned Hatcher that "the court may at any time [after expiration of the time for his response] and **without further notice to the parties** (1) treat the special report and any evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law." *Id.* at 2-3. Pursuant to this order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion, the evidentiary materials filed in support thereof, the sworn complaint and the plaintiff's response and supporting affidavit to the report, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th  Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Despite these stylistic changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of [parole] authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986);

Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Id.; Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).   Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all

other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists."  *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Prop. Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show

that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Hatcher has failed to

demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III.  DISCUSSION

#### A.  Relevant Facts and Claims for Relief

Hatcher is currently confined in the custody of the Alabama Department of Corrections on a sentence of life imprisonment imposed upon him in 1989 for a first degree rape conviction.  At the time Hatcher filed this case, he had been considered for parole on six separate occasions and was denied parole each time.  The denial of parole relevant to this cause of action occurred on February 27, 2013, when defendants Wynne and Walker voted to deny Hatcher parole.  *Exh. F to the Special Report (Report of Action by the Board) - Doc. No. 21-2* at 8.

Hatcher asserts that the defendants deprived him of fair consideration for parole in violation of his due process rights as the decision to deny parole allegedly arose from arbitrary and capricious actions.  *Compl. - Doc. No. 1* at 6.  In support of this assertion, Hatcher alleges that the defendants deprived him of due process in the parole consideration process because false and erroneous information "has probably been used to deny Plaintiff parole consideration."  *Id*. ("'Who's not to say' that this false, erroneous, and prejudicial information [regarding health issues/danger to society referenced in 1998 by previous parole officials] is not being used or considered as part of the Board's decision to release Plaintiff [on parole]. . . .  Plaintiff can't actual[ly] say that this false, erroneous, and prejudicial information is being considered, but [it's] highly probably

9

being considered during the hearings but 'who's not to say' it is not [being considered]?").  In his amendment to the complaint, Hatcher asserts that any reliance on this information to deny him parole in February of 2013 violates the ADA and Rehabilitation Act.  *Doc. No. 7* at 1.

The defendants deny reliance on the information regarding Hatcher's medical status to deny him parole and, instead, maintain that the review of other relevant documents, including Hatcher's criminal record and the nature of his offenses, demonstrated to the voting members of the parole board that Hatcher did not constitute an acceptable risk for release on parole.  *Exh. 1 to the Special Report - (Aff. of Cliff Walker) - Doc. No. 21-1* at 2-3; *Exh. 7 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 21-7* at 2-3 (same).

## B.  Respondeat Superior

Defendants Wynne and Walker are the only defendants who in any manner participated in the decision to deny Hatcher parole in February of 2013.  Thus, the claims against the remaining individual defendants entitle Hatcher to no relief as these claims are based on theories of respondeat superior and/or vicarious liability.

The law is well settled that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* or vicarious liability.  *Robertson v. Sichel,* 127 U.S. 507 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly

employed by or under him, in the discharge of his official duties."). "Because vicarious

liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-

official defendant, through the official's own individual actions, has violated the

Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d

1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the

unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious

liability."); *Marsh v. Butler Cty.*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory

official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v.

Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding supervisory officials are not

liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193

F.3d 1263, 1269 (11th Cir. 1999), citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396

(11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials

liable for the actions of their subordinates under either a theory of respondeat superior or

vicarious liability.). "Absent vicarious liability, each Government official, his or her title

notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677.

Thus, liability for actions of defendants Wynne and Walker could attach to the other

named defendants only if these other defendants "personally participate[d] in the alleged

unconstitutional conduct or [if] there is a causal connection between [their] actions . . .

and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Hatcher, however, has presented no evidence, and the court cannot envision the

existence of any evidence, which would create a genuine issue of disputed fact with

respect to the claims lodged against defendants Longshore, Weatherly, Dillard, Cook and Bryant. The only evidentiary materials filed in this case which could be presented at trial demonstrate that these defendants did not personally participate in or have any involvement with the claims on which Hatcher seeks relief. In light of the foregoing, defendants Longshore, Weatherly, Dillard, Cook and Bryant can be held liable for actions of defendants Wynne and Walker only if their actions bear a causal relationship to the purported violations of Hatcher's constitutional rights and federal law.

To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendants Longshore, Weatherly, Dillard, Cook and Bryant, Hatcher must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [these defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [these defendants] directed [defendants Wynne and Walker] to act unlawfully, or knew that [they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Hatcher has failed to meet this burden.

The record before the court contains no evidence to support an inference that defendants Longshore, Weatherly, Dillard, Cook and Bryant directed Wynne and Walker to act unlawfully or knew that they would act unlawfully and failed to stop such action.

In addition, Hatcher has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which these defendants failed to take corrective action. Finally, it is clear that the challenged actions did not occur pursuant to a policy enacted by Longshore, Weatherly, Dillard, Cook and Bryant.   Thus, the requisite causal connection does not exist between the actions challenged by Hatcher and the conduct of the aforementioned defendants and liability under the custom or policy standard is not warranted. Summary judgment is therefore due to be granted in favor of defendants Longshore, Weatherly, Dillard, Cook and Bryant.

### C.  False Information

Hatcher complains that defendants Wynne and Walker possibly relied on false and erroneous information to deny him parole.  *Compl. - Doc. No. 1* at 6.   Specifically, Hatcher alleges that a notation on his 1998 report of denial contains a reference to "Health Issue/Danger to Society" which he contends is false information because, in his opinion, he is not a danger to society.  *Id.*

In response to Hatcher's claims, defendant Walker states as follows:

> .  .  .  .   [As] a Member of the Alabama Board of Pardons and Paroles[,] . . . I have the discretionary decision-making authority to decide which prisoners to release from prison on parole and when and under what conditions to release them on [parole].  I was one of two Board Members [the other being William Wynne] who took an action to deny Ronald Hatcher parole on February 27, 2013.
> I personally studied Ronald Hatcher's parole file and conducted an individualized assessment of his suitability for parole when considering him for parole.  In doing so, I evaluated his criminal record and social record, considered the nature and severity of his criminal offenses, considered his potential for future violence, and took into consideration the community attitude towards him.  I also considered the testimony and

information presented to me by the public officials, members of the public, Ronald Hatcher's family and friends, the victim, and the victim's family in attendance at his parole hearing when making my decision to deny Ronald Hatcher parole.

I was not of the opinion that there was reasonable probability that if Ronald Hatcher were released on parole that he could live and remain at liberty without violating the law and that his release would be compatible with the welfare of society. Therefore, I denied him parole on February 27, 2013 and reset him for further parole consideration in February 2016. [It appears that Hatcher was again denied parole after this most recent parole consideration.]

I deny knowingly relying on false information in Ronald Hatcher's parole file to deny him parole. I specifically deny relying on the 1998 Board Order that states "Health Issues/Danger to Society" to deny Ronald Hatcher parole.

I deny violating Ronald Hatcher's constitutional rights. I specifically deny discriminating against Ronald Hatcher on the basis of his HIV status.

I further deny excluding any class of prisoners with disabilities or illnesses, to include, but not limited to prisoners with HIV, from consideration for parole or from receiving the benefit of parole. I consider each parole application on an individualized basis to determine a prisoner's suitability for parole.

While on the Board, I have granted parole to numerous prisoners who were HIV infected and who have other forms of disabilities.

*Exh. 1 to the Special Report (Aff. of Cliff Walker) - Doc. No. 21-1 at 2-3; Exh. 7 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 21-7 at 2-3 (same).*

Defendants Wynne and Walker do not admit that the information they utilized in the parole decision-making process was false and categorically deny any knowing reliance on false information. *Exh. 1 to the Special Report (Aff. of Cliff Walker) - Doc. No. 21-1 at 2; Exh. 7 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 21-7 at 2.* They further adamantly deny reliance on either the notation contained on the 1998 form or Hatcher's HIV status in deciding to deny Hatcher parole. *Id.* at 2-3. Instead, Wynne and Walker aver that they "conducted an individualized assessment of

14

[Hatcher's] suitability for parole[,]" which included both evaluation of "his criminal record . . . the nature and severity of his criminal offenses . . . his potential for future violence, and . . . the community attitude towards him" and consideration of  "the testimony and information presented to [them] by the public officials, members of the public, Ronald Hatcher's family and friends, the victim, and the victim's family in attendance at his parole hearing[.]"  *Id*. at 2.  Based on their assessment, defendants Wynne and Walker were "not of the opinion that there was a reasonable probability that if Ronald Hatcher were released on parole that he could live and remain at liberty without violating the law [or] that his release would be compatible with the welfare of society." *Id*.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary and capricious treatment violative of the Constitution.  The appellate court, however, carefully distinguished its holding in *Monroe* from its prior decision in *Slocum v. Georgia State Bd. of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982).

> Our holding today does not conflict with our earlier holding in *Slocum*, *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the conclusory allegation that the Board must have relied upon erroneous information because otherwise the Board would surely have granted him parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due process right to examine his prison file for the alleged errors.  Unlike the instant case, in *Slocum* the state did not admit that it had relied upon false information in denying parole nor did the plaintiff present any evidence that his prison file even contained any false information.  We held in *Slocum* that prisoners do not state a due process claim by merely asserting that

> erroneous information may have been used during their parole consideration. *Id.* at 942. We also determined that prisoners do not have a due process right to examine their prison files as part of a general fishing expedition in search of false information that could possibly exist in their files. *Id*. In the case at bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender. As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442. *Slocum* controls the disposition of the instant false information claim.

Defendants Wynne and Walker maintain that the information on which they relied to deny Hatcher parole is true and that reliance on this information did not infringe on any of Hatcher's constitutional rights. Of specific importance, there is no admission by the defendants that the information utilized in denying Hatcher parole is false, incorrect or erroneous. Hatcher has failed to come forward with any evidence which indicates that the defendants knowingly used false information during the parole consideration process. Moreover, Hatcher's conclusory assertion regarding the potential use of false information does nothing more than raise the possibility that information in his records may be false and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that the defendants did not rely on ***admittedly*** false information in their decision to deny Hatcher parole. Consequently, the plaintiff is

16

entitled to no relief as a matter of law and entry of summary judgment in favor of defendants Wynne and Walker is appropriate.

### D. The Americans with Disabilities Act and Rehabilitation Act Claims

Hatcher alleges that the defendants denied him parole in violation of Title II of the Americans with Disabilities Act Disabilities Act and § 504 of the Rehabilitation Act.

> Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. Section 504 provides that, "No otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).14 Claims under both statutes are governed by the same standards. *See, e.g., Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000); *see also Everett v. Cobb County Sch. Dist.*, 138 F.3d 1407, 1409 (11th Cir.1998). To state a claim under either statute, the plaintiffs must show: "(1) that [they are] qualified individual[s] with a disability; (2) that [they were] either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff[s'] disability." *Bircoll v. Miami–Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citation omitted); *see also Harris* [*v. Thigpen*,] 941 F.2d [1495,] 1522 [11th Cir. 2006] (applying those elements in the prison context). . . . [T]he same standards govern claims under both statutes[.]
>
> . . . . HIV is a disability under the ADA [and Rehabilitation Act]. However, the ADA [and Rehabilitation Act] extend[] [their] protections to only individuals claiming discrimination with respect to, or exclusion from, a public entity's services who were "otherwise qualified" for those services. *Onishea* [*v. Hopper*], 171 F.3d 1289,] 1300 [11th Cir. 1999)]. "'An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.'" *Id.* (quoting *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)).

*Henderson v. Thomas*, 913 F. Supp. 2d 1267, 1287-88 (M.D. Ala. 2012); *Flournoy v. Culver*, 534 F. App'x 848, 851 (11th Cir. 2013) (Under both the ADA and the Rehabilitation Act, "a 'qualified individual with a disability' cannot be excluded from participating in, or be denied the benefits of, services, programs, or activities of a public entity 'by reason of such disability' or 'be subjected to discrimination by' the public entity.  *See* 42 U.S.C. § 12132."); *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) (citations omitted) (Although the Rehabilitation Act contains the additional requirement that the program or activity receive federal funds, 29 U.S.C. § 794, "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").  Title II of the ADA applies to inmates confined in state correctional facilities.  *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citing *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)); *Bircoll*, 480 F.3d at 1081 (It is well settled law "that a disabled prisoner can state a Title II ADA claim if he is denied participation in an activity . . . by reason of his disability.");[2]

---

[2]In *United States v. Georgia*, 546 U.S. 151, 152-154 (2006), the Court advised:

> Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." § 12132 (2000 ed.).  A "'qualified individual with a disability'" is defined as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity."  §12131(2).  The Act defines "'public entity'" to include "any State or local government" and "any department, agency, . . . or other instrumentality of a State." §12131(1).

*Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263-1264 (11th Cir. 2007) (quoting *Cash*, 231 F.3d at 1305) ("In order to establish a prima facie case of discrimination under the ADA [or Rehabilitation Act], [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability.").

Initially, the defendants assert that they did not consider Hatcher's HIV status when determining that he was not a suitable candidate for release on parole. In addition, the defendants argue that

> . . . . Hatcher has failed to sufficiently allege or show that he is a "qualified individual" with a disability as defined under the ADA. See <u>Waddell v. Valley Forge Dental Associates, Inc.</u>, 276 F.3d 1275, 1279 n. 4 (11th Cir. 2001). It is the Board's contention that Hatcher is not a "qualified individual" with a disability as defined under the ADA. In the context of parole denials, the Ninth Circuit Court of Appeals in <u>Thompson v. Davis</u>, 295 F.3d 890, 898 n.4 (9th Cir. 2002), <u>cert. denied</u>, 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003), held that where a parole board has considered many factors and determined that the prison is not qualified for parole, that prisoner has not made a showing that he is a "qualified individual with a disability" under the ADA. *Id.*
>
> The issue of whether or not a parole board's denial of parole to a prisoner can result in a violation of the Americans with Disabilities Act (ADA) or Section 504 of the Rehabilitation Act where there is no liberty interest in parole is a matter of first impression in this Circuit. Therefore, this Court must look to other circuits for guidance. The Ninth Circuit in <u>Thompson v. Davis</u>, 295 F.3d 890, 898 n.4 (9th Cir. 2002), <u>cert. denied</u>, 538 U.S. 921, 123 S.Ct. 1570, 155 L.Ed.2d 311 (2003) held that "plaintiffs may state a claim under Title II based on their allegations that the parole board failed to perform and individualized assessment of the threat they pose to the community by categorically excluding from consideration for parole all people with substance abuse histories." *Id.*, n.4.

*Special Report of the Defendants - Doc. No. 21* at 27-28. The defendants further argue that no violation of the ADA or Rehabilitation Act occurred because they did not

categorically exclude Hatcher from consideration for parole due to his HIV status and, instead, performed an individualized assessment of the threat he posed to society in determining whether to grant him release on parole. *Id.* at 27-28, citing *Thompson*, *supra*.[3]

It appears to the court that where members of a parole board have reviewed appropriate evidence and, absent reliance on the inmate's HIV status or other disability, determined that he should not be released on parole the inmate is not extended the protections of the ADA or the Rehabilitation Act as he is not "otherwise qualified" for release on parole. *Onishea*, 171 F.3d at 1300. Specifically, under such circumstances, parole officials have determined that the inmate is not due release on parole irrespective of his handicap. *Id.*; *Davis*, 442 U.S. at 406. Nevertheless, assuming *arguendo* that Hatcher is a qualified individual with a disability, he is entitled to no relief.

1. <u>Claim for Damages from Defendants Wynne and Walker in Their Individual Capacities</u>. To the extent Hatcher seeks monetary damages from the defendants in their individual capacities for an alleged violation of the ADA and the Rehabilitation Act, he is

---

[3]The defendants also assert that the court in *Thompson* "further held that neither the ADA nor Section 504 of the Rehabilitation Act prohibits a parole board from considering a prisoner's 'disability' in making an individualized assessment of his suitability for release on parole or an individualized assessment of his future dangerousness. . . . [Thus], the Board can very well consider Hatcher's HIV status along with other factors relevant to whether or not Hatcher is suitable for parole when considering whether or not Hatcher can remain at liberty without violating the law and whether or not Hatcher's release would be compatible with the welfare of society. See § 15-22-26, Ala. Code 1975 and <u>Thompson</u>, *supra*. The Board has a legitimate penological interest in considering a prisoner's health, mental health, and his potential propensity to commit another crime when making an individual assessment into a prisoner's suitability for parole. <u>Thompson</u>, *supra*." *Special Report of the Defendants - Doc. No. 21* at 28-29. However, because defendants Wynne and Walker deny any consideration of Hatcher's HIV status during the parole consideration process, the court deems it inappropriate to address whether such **could** be a factor considered in determining an inmate's suitability for release on parole.

entitled to no relief as these statutes do not provide for individual capacity liability. *Badillo v. Thorpe*, 158 F. App'x 208, 211-212 (11th Cir. 2005) (relying on *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2nd Cir. 2001); *Dale v. Moore*, 121 F.3d 624, 627 (11th Cir. 1997) ("[T]he ADA does not provide for individual liability[.]"); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (same). Defendants Wynne and Walker are therefore entitled to summary judgment on Hatcher's claim for monetary damages under the ADA and Rehabilitation Act lodged against them in their individual capacities.

2.  <u>Request for Damages Against Defendants Wynne and Walker in Their Official Capacities</u>.  "[I]nsofar as Title II of the ADA creates a private cause of action for damages against the States for conduct that ***actually*** violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  *Georgia*, 546 U.S. at 159. (emphasis in original).  Consequently, with respect to the claims seeking monetary relief from defendants Wynne and Walker in their official capacities, claims which are "in all respects . . . a suit against the entity[,]" *Kentucky v. Graham*, 473 U. S. 159, 166 (1985), the court must determine whether Hatcher has presented a claim viable under the ADA or Rehabilitation Act.

Defendants Wynne and Walker deny violating any rights afforded Hatcher regarding the parole consideration process or their decision to deny parole.  Specifically, Wynne and Walker state that they did not consider Hatcher's HIV status when determining whether to grant him parole.  It is undisputed that the defendants considered

21

Hatcher for parole and, after undertaking an individualized review of records regarding his criminal, correctional, personal and social histories, the nature of his criminal offense(s) and the evidence presented at the parole hearing, denied Hatcher parole based on their opinions that he could not remain at liberty without violating the law and his release was therefore incompatible with society's welfare. *Exh. 1 to the Special Report (Aff. of Cliff Walker) - Doc. No. 21-1* at 2; *Exh. 7 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 21-7* at 2.

The evidence properly before the court demonstrates that the defendants' opinions regarding Hatcher's incompatibility for release into society constituted the basis for the decision to deny him parole. The record is devoid of evidence that the denial of parole was in any way based on Hatcher's HIV status. *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1332, 1334 (11th Cir. 1999) (plaintiff must present evidence the disability constituted a determinative factor in the decision-making process); *see also McNely v. Ocala-Star Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (the ADA liability standard requires proof that the decision at issue occurred because of the alleged disability). Rather, the only evidence which would be admissible at trial demonstrates that the denial of parole was based solely on the defendants' determination, without consideration of Hatcher's medical condition, that Hatcher was not suitable for release on parole. *Id.* In light of the foregoing, Hatcher's ADA and Rehabilitation Act claims provide no basis for relief and the defendants are therefore entitled to summary judgment on these claims.

## E.  Due Process

To the extent Hatcher seeks relief for an alleged lack of due process with respect to the parole consideration process and the resulting denial of parole, these claims entitle him to no relief.

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole. . . . When the statute is framed in discretionary terms there is not a liberty interest created. . . .  Alabama parole statutes do not create a liberty interest [in parole]."  *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[4]  The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process. . . .'  . . .  [In addition], the Alabama

---

[4]Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but *only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society*.  If the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and enclosure upon such terms and conditions as the board shall prescribe....

*Ala. Code* § 15-22-26 (emphasis added).  The statute is clear that the decision to grant parole is within the sole discretion of members of the parole board and that parole is permitted only when board members, in their opinion, deem an inmate suitable for release on parole.

parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

Hatcher does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution. *Heard v. Georgia State Bd. of Pardons and Paroles*, 222 F. App'x. 838, 840 (11th Cir. 2007); *Monroe*, 932 F.2d at 1441; *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489. Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness." *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions."). Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process. *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. Defendants

Wynne and Walker maintain that they acted in accordance with the Constitution, federal law, state law and applicable administrative regulations when they denied Hatcher parole. They also advise that the decision to deny parole was based on their determination that Hatcher did not present an acceptable risk for release on parole.[5]   The decision of the parole board members demonstrates a reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).   Hatcher has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its members.   Consequently, summary judgment is due to be granted in favor of defendants Wynne and Walker with respect to Hatcher's claims implicating due process protection.

---

[5]Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted.  *Ala. Code* § 15-22-24(a).   The law further gives the parole board total discretion in determining whether an inmate should be granted parole.  *Ala.Code* § 15-22-26 (A prisoner shall not be released on parole unless "the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society.").   The Alabama parole statutes governing standards for parole of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles.  *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.  The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts." *Thomas*, 691 F.2d at 489.  As the findings set forth herein make clear, there has  been no flagrant or unauthorized action by the parole board or its members warranting interference by this court.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before April 22, 2016 the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 8th day of April, 2016.


          /s/  Wallace Capel, Jr.
          UNITED STATES MAGISTRATE JUDGE